1997 ME 195

**Jane DOE, et al.,**

v.

**DEPARTMENT OF MENTAL HEALTH, MENTAL RETARDATION, AND SUBSTANCE ABUSE SERVICES, et al.**

Supreme Judicial Court of Maine.

Argued April 10, 1997.
Decided Aug. 29, 1997.

Timothy L. Belcher (orally), Maine State Employees Association, Augusta, for Plaintiffs.

Andrew Ketterer, Attorney General, Christopher Leighton, Assistant Attorney General (orally), Augusta, for Defendants.

Charles J. Glasser, Jr., Jonathan S. Piper, Preti, Flaherty, Beliveau & Pachios, Portland, for Intervenor The Kennebec Journal.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

WATHEN, C.J.

[¶ 1] Plaintiffs Jane Doe and John Doe, unnamed state employees, and the Maine State Employees' Association, appeal from the judgment entered against them in the Superior Court (Kennebec County, *Alexander, J.*) and in favor of defendants, the Department of Mental Health, Mental Retardation, and Substance Abuse Services and the Department of Administrative and Financial Services ("Departments"). Plaintiffs argue on appeal that the court erred in requiring public disclosure of the contents of a written arbitration decision invalidating disciplinary action. Finding no error, we affirm the judgment.

[¶ 2] The facts, as developed for the purposes of the summary judgment, are as follows: In April 1996, Wrendy Hayne was killed while a patient at the Augusta Mental Health Institute ("AMHI"). In response to this incident, the Commissioner of the Department of Mental Health and Mental Retardation ordered an internal disciplinary investigation of the conduct of the state employees at AMHI. As a result of the investigation, plaintiffs and others were disciplined.

[¶ 3] As permitted by the collective bargaining agreement governing her employment, Jane filed a grievance with respect to the imposition of discipline. The arbitrator concluded that discipline had been imposed without just cause and ordered all reference to the discipline removed from Jane's personnel file. At that time, a request had been made to the Department of Mental Health and Mental Retardation by the Joint Standing Committee on Health and Human Services of the Maine Legislature for "copies of all disciplinary actions taken" as a result of Hayne's death. To prevent the disclosure of the arbitrator's decision, plaintiffs filed a complaint in the Superior Court requesting injunctive and declaratory relief. The court issued an order restraining defendants from releasing the arbitration award relating to Jane Doe, as well as other awards to similarly situated employees, pending further action in the case. The arbitrator then issued a decision concluding that the discipline imposed against John Doe was also imposed without just cause. He ordered all reference to the discipline removed from John's file. The complaint in the Superior Court was then amended to include John as a plaintiff.

[¶ 4] At the hearing on their motion for a preliminary injunction, plaintiffs informed the court that they agreed to the release of the arbitration awards, provided the names and addresses of the individual employees were omitted. The court preliminarily enjoined defendants from disclosing the names but provided that the remainder of the awards, except certain information protected as confidential by statute, could be released. Intervenor Guy Gannett Communications, d/b/a *The Kennebec Journal,* subsequently requested that defendants release the arbitration awards and redacted copies were released and their contents were widely reported by media sources throughout the state.[1]

[¶ 5] After cross motions for summary judgment were filed by all parties, the court granted summary judgment in favor of defendants and intervenor. It declared that defendants could disclose the contents of the arbitrator's decisions provided that patient information protected by law was first removed. An appeal from the judgment was filed and the release of the names was stayed pending the present appeal.

[¶ 6] The Maine Legislature has determined that public records are to be "open to public inspection," 1 M.R.S.A. § 401 (1989), and, through the enactment of the Freedom of Access Act, 1 M.R.S.A. §§ 401–410 (1989 & Supp.1996), has mandated that, "[e]xcept as otherwise provided by statute, every person shall have the right to inspect and copy any public record during the regular business hours of the custodian or location of such record...." *Id.* § 408. Plaintiffs do not challenge the status of their arbitration awards as "public records" within the meaning of the Freedom of Access Act.[2]

1. In addition to the legislative request for the awards and the request by *The Kennebec Journal,* Eric M. Mehnert, Esq., counsel to Don and Janice Burns, requested "all unredacted (except for patient confidentiality) Level III decisions concerning any individual who was disciplined for the care and treatment of Harold Pulsifer and/or Wendy Hayne."

2. Maine's Freedom of Access law defines a public record as:
   any written, printed or graphic matter or any mechanical or electronic data compilation from which information can be obtained, directly or after translation into a form suscepti-
ble of visual or aural comprehension, that is in the possession or custody of an agency or public official of this State or any of its political subdivisions, or is in the possession or custody of an association, the membership of which is composed exclusively of one or more of any of these entities, and has been received or prepared for use in connection with the transaction of public or governmental business or contains information relating to the transaction of public or governmental business, except:
   A. Records that have been designated confidential by statute.
   ....

The present case involves the construction of an exception to the Act pertaining to records of state employees. The exception in question provides, in part:

> The following records shall be confidential and not open to public inspection, and shall not be "public records," as defined in Title 1, section 402, subsection 3:
>
> . . . .
>
> **2. Personal information.** Records containing the following, except they may be examined by the employee to whom they relate when the examination is permitted or required by law:
>
> . . . .
>
> E. Except as provided in section 7070–A [3] complaints, charges or accusations of misconduct, replies to those complaints, charges or accusations and any other information or materials that may result in disciplinary action. *If disciplinary action is taken, the final written decision relating to that action is no longer confidential after the decision is completed.*

5 M.R.S.A. § 7070(2)(E) (Supp.1996) (emphasis added).

[¶ 7] Defendants contend that the meaning and application of the statute is clear—disciplinary action has been "taken" against plaintiffs and the arbitration award is the "final written decision" relating to that action and is not confidential. Plaintiffs argue that the exception to the confidentiality rule set out in section 7070(2)(E) should not apply when discipline is ultimately found to have been unjustified. They argue that an underlying purpose of the statute is to protect employees from the adverse consequences of disclosing unfounded accusations.

[¶ 8] Statutory construction is a matter of law. *Thibeault v. Larson*, 666 A.2d 112, 114 (Me.1995). "When construing a statute, we must give effect to the Legislature's intent." *Town of Madison, Dept. of Elec. Works v. PUC*, 682 A.2d 231, 234 (Me. 1996). "Intent is ordinarily gleaned from the plain language of the statute itself. Such plain meaning will be applied so long as it does not lead to an absurd, illogical, or inconsistent result." *Id.* In addition, because the Freedom of Access Act mandates that its provisions "shall be liberally construed," 1 M.R.S.A. § 401, "we must interpret strictly any statutory exceptions to its requirements." *Bangor Pub. Co. v. City of Bangor*, 544 A.2d 733, 736 (Me.1988); *see also Guy Gannett Pub. v. University of Maine*, 555 A.2d 470, 471 (Me.1989) ("a corollary to such liberal construction of the Act is necessarily a strict construction of any exceptions to the required public disclosure") (quoting *Moffett v. City of Portland*, 400 A.2d 340, 348 (Me. 1979)).

[¶ 9] The Legislature has provided that the "final written decision *relating to*" disciplinary action taken against a state employee is no longer confidential after the decision has been completed. In all cases where administrative discipline proceeds to arbitration, the relevant "final written decision" is the "final written decision of [the] neutral arbitrator." [4] Final arbitration decisions "relating to" disciplinary action necessarily include those decisions rejecting discipline as well as those upholding it.[5] The public's interest in an instance of improper

---

1 M.R.S.A. § 402(3) (Supp.1996).

**3.** 5 M.R.S.A. § 7070–A deals with personnel records concerning the use of force by a law enforcement officer and is irrelevant to the present case.

**4.** For the purposes of section 7070(2)(E), "final written decision" means:
  (1) The final written administrative decision that is not appealed pursuant to a grievance arbitration procedure; or
  (2) If the final written administrative decision is appealed to arbitration, the final written decision of a neutral arbitrator.

A final written administrative decision that is appealed to arbitration is no longer confidential 120 days after a written request for the decision is made to the employer if the final written decision of the neutral arbitrator is not issued and released before the expiration of the 120 days . . . .

5 M.R.S.A. § 7070(2)(E) (Supp.1996).

**5.** A decision "relates to" disciplinary action if it has "connection, relation, or reference" to it. WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY (1988) (definition of "relate").

discipline is no less apparent than its interest in an instance of properly imposed discipline. In the latter case, the final decision reflects on the action of the employee. In the former case, in addition to vindicating the employee, it may also reflect on the action of the supervisor.

[¶ 10] Plaintiffs were disciplined. Although that decision was later rejected by the arbitrator, plaintiffs were subjected to disciplinary action. Section 7070(2)(E) provides that "[I]f disciplinary action is taken, the final written decision relating to that action is no longer confidential after the decision is completed."

The entry is:

Judgment affirmed.

ROBERTS, GLASSMAN and CLIFFORD, Justices, dissenting.

[¶ 11] I respectfully dissent because I disagree with the Court's interpretation of 5 M.R.S.A. § 7070(2)(E). That provision is a part of chapter 372 of title 5, which establishes the State Civil Service System. In a subpart dealing with employee benefits, records, and training, section 7070 provides control of personnel records and states, "The following records shall be confidential and not open to public inspection, and shall not be 'public records,' as defined in Title 1, section 402, subsection 3." Section 7070(2) provides protection for personal information such as medical information, performance evaluations, creditworthiness, and personal and family history. Paragraph (E) of subsection (2) provides protection for personnel records of "complaints, charges or accusations of misconduct, replies to those complaints, charges or accusations and any other information or materials that may result in disciplinary action."

[¶ 12] It is obvious that the Legislature intended to create a distinction between "complaints, charges or accusations" of misconduct and disciplinary action itself. The purpose of the distinction was to protect public employees against the disclosure of unfounded charges of misconduct. The provision goes on to specify that only in the event that "disciplinary action is taken" shall the final written decision relating to that action be made available to the public.

[¶ 13] The key issue in this case is whether disciplinary action was taken against the plaintiffs. The Court takes the position that disciplinary action, as contemplated by the Legislature, includes even those instances when action taken against employees is unfounded. Such an interpretation is at odds with the statute's plain purpose of protecting employees against unfounded charges of misconduct. In this case, disciplinary action was never taken against the plaintiffs, they suffered no penalty, and the Department's actions were found to have been taken without just cause.

[¶ 14] The Court's parsing of the second paragraph of section 7070(2)(E), which was added by P.L.1991, ch. 229, § 1, is not persuasive. The addition merely defines "final written decision" and addresses the consequence of a delay in the arbitration process that is not present in the record before us. The second sentence of the first paragraph remains the same, except for a minor grammatical change. That critical sentence permits the release of otherwise confidential *personal* information contained in personnel records. That sentence is preceded by the clause "[i]f disciplinary action is taken." The Court's interpretation of section 7070(2)(E) ignores this important point and disregards the Legislature's desire to protect employees against charges not proven to be true. *See Jordan v. Sears, Roebuck & Co.*, 651 A.2d 358, 360 (Me.1994) (in addition to examining the plain meaning of language to determine legislative intent, we also consider the whole statutory scheme of which the section at issue forms a part so that a harmonious result may be achieved). I would vacate the judgment.